# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**NUNEZ LOPEZ, NEYDER ENRIQUEZ,**

        **Petitioner,**

     **vs.**                                **Civ. No. 26cv641  JB/JFR**

**KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security; PAMELA BONDI, in her official
Capacity as Attorney General of the United
States; TODD LYONS, in his official capacity
as Acting Director and Senior Official
Performing Duties of the Director of U.S.
Immigration and Customs Enforcement;
JOEL D. GARCIA, in his official capacity as
Field Office Director of the El Paso Field
Office of U.S. Immigration and Customs
Enforcement, Enforcement and Removal
Operations; GEORGE DEDOS, in his official
capacity as Warden of the Cibola County
Processing Center,**

        **Respondents.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION[1]

     **THIS MATTER** is before the Court on Petitioner's *Petition for Habeas Corpus*, filed

March 4, 2026.  Doc. 1.  On March 18, 2026, the Federal Respondents filed a Response to the

Petition for Writ of Habeas Corpus.[2]  Doc. 6.  For the reasons set forth below, the undersigned

recommends that the Petition (Doc. 1) be **GRANTED IN PART**.

---

[1] By an Order of Reference Relating to Immigration Habeas Corpus Proceedings filed March 12, 2026, the presiding judge, United States District Judge James O. Browning, referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case.  Doc. 4; *accord* 28 U.S.C. §§ 636(b)(1)(B), (b)(3); *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990).

[2] Counsel for the Federal Respondents do not represent the warden of the detention facility, as it is a private facility, and the warden is not a federal employee.  Doc. 6 at 1 n.1.  However, all arguments made on behalf of the remaining respondents would apply equally to the warden.  *Id.*

## I.  RELEVANT FACTUAL BACKGROUND

Petitioner is a 36 year old citizen of Venezuela.  Doc. 1 at 1, ¶ 1.  He entered the United States on or about December 18, 2021, with a visitor visa.  *Id.*  Petitioner was included as a derivative beneficiary on his husband's I-589 application for asylum at the end of February 2023.  *Id.*  Petitioner was living in New York and working lawfully.  *Id.* at ¶ 2.  On August 19, 2025, Petitioner was falsely accused of Public Lewdness and Exposure of a Person and arrested at Penn Central train station.[3]  *Id.*  No charges were pursued.  *Id.*  Petitioner, however, along with approximately 20 other individuals, was transferred into ICE custody.  *Id.* at 2, ¶ 2.  Petitioner was moved to the El Paso Detention Center and more recently transferred to the Cibola Detention Center.  *Id.* at ¶ 3.  Petitioner is detained pursuant to 8 U.S.C. § 1226(a).  *Id.* at 7, ¶ 26.

Petitioner was issued a Notice to Appear charging him as being admitted into the United States but subject to removal for overstaying his period of authorized stay.  *Id.* at 2, ¶ 4.  On September 25, 2025, Petitioner sought an individualized custody determination and his release was denied on grounds he was a "danger" to the community due to the dismissed criminal charges.  *Id.* at ¶ 5.  On November 26, 2025, Petitioner's request for review was denied because there had been no "material change" in circumstances.  *Id.*  On January 21, 2026, while still in El Paso, Petitioner was scheduled for a master calendar hearing on April 8, 2026, and anticipated being scheduled for a hearing to present his asylum case.  *Id.* at 2-3, ¶ 7.  Petitioner's being moved to Cibola Detention Center begins his case anew with a new judge.  *Id.*

Prior to his detention, Petitioner was complying with all the immigration requirements, had timely applied for asylum, obtained his work authorization, and was awaiting his interview

---

[3] Petitioner states it was reported that his arrest at Penn Central, along with approximately 200 other men, was believed to be discriminatory tactics against gay men.  Doc. 1 at 2, ¶ 2.

with USCIS. *Id.* at 3, ¶ 8. Petitioner has been detained for over six months and removal proceedings remain ongoing. *Id.* at 7, ¶ 28.

Petitioner argues that his ongoing detention has become prolonged and constitutionally excessive in relation to its regulatory purpose. *Id*. at ¶ 26. Petitioner argues that detention under § 1226(a) may be justified only to ensure appearance at proceedings and to protect the community, and may not become punitive or arbitrary. *Id.* at ¶ 27. Petitioner argues that as detention grows prolonged, due process requires meaningful review to ensure continued confinement remains justified. *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

Here, Petitioner argues that he has now been detained for over six months, his removal proceedings remain ongoing, and his continued detention is likely to persist for an indeterminate period of time. *Id.* at ¶ 28. Petitioner argues that his continued detention is not justified because (1) he has been living in the United States for almost five years; (2) he has complied with all prior immigration obligations and presents neither a flight risk nor a danger to the community; (3) less restrictive alternatives to detention are available to ensure his appearance at hearings, including reporting requirements or electronic monitoring; and (4) the prolonged duration of his detention is through no fault of his own but instead the result of delays in proceedings, forum shopping, and administrative processing. *Id.* at 8, ¶ 30. Petitioner further argues that due process requires that immigration custody determinations must be based on reliable and probative evidence and that reliance here on dismissed charges is inappropriate. *Id.* at ¶ 32. Petitioner is not seeking review of the discretionary bond decision, but challenges the constitutionality of his continued detention. *Id.* at ¶ 33.

Petitioner requests this Court (1) grant his Petition and direct Respondents to immediately release him from custody or, in the alternative, to hold a prompt bond hearing to determine

whether Petitioner should remain in custody; (2) enter preliminary and permanent injunctive relief enjoining Respondents from further unlawful detention Petitioner; (3) issue a temporary restraining order and permanent injunction preventing Respondents from transporting Petitioner outside the United States or outside the judicial district; (4) order service and directing Respondents to respond; and (5) award Petitioner's attorney fees pursuant to the Equal Access to Justice Act. *Id.* at 9.

On March 6, 2026, the Court issued an Order to Answer.[4]  Doc. 3.

On March 18, 2026, Respondents filed a Response.  Doc. 6.  Respondents request the Court deny the Petition.  Respondents contend that Petitioner has failed to exhaust his administrative remedies because he did not appeal the Immigration Judge Orders to the Board of Immigration Appeals.[5]  *Id.* at 6-8.  Respondents contend that the legality of Petitioner's underlying arrest is not presently relevant and not the source of his present custody which "flows not from his arrest and initial post-arrest detention, but from the authority of the INA."  *Id.* (citing 8 U.S.C. 1225(b)(2)).  Respondents contend "the Court should find that Section 1226 applies because Petitioner entered the country with a visitor visa and overstayed the amount of time permitted with said visa."  *Id.* at 2.  Respondents contend that Petitioner has already received an individualized detention hearing and that the Immigration Judge's discretionary judgment is not subject to judicial review.  *Id.* at 11.  Respondents further contend that should the Court find that Section 1226 applies that Petitioner's subsequent relief, if any, would be to return

---

[4] In the Order to Answer, the Court ordered that Respondents are prohibited from transferring Petitioner outside the District of New Mexico while this proceeding is pending in order to ensure the Court retains jurisdiction in this matter. Doc. 3 at 2.

[5] Petitioner states that he did not appeal the decisions to the BIA due to the extensive wait times.  Doc. 1 at 4, ¶ 12. He further explains had he appealed it would likely still be pending or summarily dismissed due to the extensive backlog.  *Id.*

Petitioner to classification under Section 1226 with eligibility for a bond review in the normal course.  *Id.*

Respondents contend that Petitioner should not be awarded attorney fees and costs under the Equal Access to Justice Act because the Government's position to mandatorily detain Petitioner is substantially justified.  *Id.* at 12-13.

### III.  LEGAL STANDARD

The All Writs Act, as the name implies, provides federal courts with general authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions . . . ."  28 U.S.C. § 1651(a) (emphasis added).  Available writs include, *inter alia*, mandamus, habeas corpus, certiorari, quo warranto, and prohibition—antiquatedly termed "prerogative writs."  *See generally Withrow v. Williams*, 507 U.S. 680, 716 (1993) (Scalia & Thomas, JJ., concurring in part) ("In English law, habeas corpus was one of the so-called 'prerogative' writs, which included the writs of mandamus, certiorari, and prohibition." (citations omitted)).

Additionally, 28 U.S.C. § 2241(a) provides federal courts the jurisdiction to grant a writ of habeas corpus to "release from unlawful physical confinement," *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973), a petitioner demonstrating "by a preponderance of the evidence," *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (per curiam), the existence of one of the five circumstances enumerated in 28 U.S.C. § 2241(c).  Relevant here, a petition for a writ of habeas corpus raised pursuant to 28 U.S.C. § 2241(c)(3) seeks release from federal custody that is "in violation of the Constitution or laws or treaties of the United States . . . ."

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).  This includes immigration-related detention.  *Zadvydas v.*

*Davis*, 533 U.S. 678, 687 (2001); *Rasul v. Bush*, 542 U.S. 466, 483-84 (2004) ("[Noncitizen] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004).

## IV.  ANALYSIS

To begin, the Court is not persuaded that Petitioner is required to exhaust his administrative remedies before the Court can order habeas relief.  Petitioners are ordinarily required to exhaust their administrative remedies prior to seeking a writ under 28 U.S.C. § 2241, but exhaustion is not a statutory requirement.  *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310–11 (10th Cir. 2004) (Although appealing to the BIA normally is required to obtain subsequent judicial review, exhaustion deficiencies do not affect habeas jurisdiction over challenges to immigration detention.).  As another court within the Tenth Circuit recently explained in the context of an immigration habeas matter, "exhaustion is typically nonjurisdictional, and courts treat a rule as jurisdictional only if Congress clearly states that it is."  *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Ok. June 12, 2025) (citation modified) (quoting *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–17, 143 S.Ct. 1103, 215 L.Ed.2d 375 (2023)).  Further, the Tenth Circuit has not addressed whether the exhaustion requirement applies in the immigration context, and the INA only explicitly requires exhaustion of administrative remedies when challenging a final removal order, which is not the case here.  *See* 8 U.S.C. § 1252(d)1); *see also Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (explaining that administrative exhaustion applies to challenges of final orders of removal but not to challenges to preliminary custody or bond determinations).  "[W]here Congress [has] not clearly required exhaustion, sound judicial

6

discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (requiring courts to weigh the institutional interests in exhaustion against the individual interests in prompt judicial review); *see also L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024) ("When Congress does not require exhaustion in the statute then the district court has discretion to decide if administrative exhaustion is required."); *Lopez-Arevelo v. Ripa*, No. EP-25cv337, 2025 WL 2691828 at *6 (W.D. Tex. Sept. 22, 2025) ("To wait, indefinitely, for a ruling on that appeal would be inappropriate because it would exacerbate [the petitioner's] alleged constitutional injury— detention without a bond hearing."); *Lopez v. Barr*, 458 F. Supp. 3d 171, 176 (W.D.N.Y. 20202) ("[C]ourts can excuse a failure to exhaust if the case presents a substantial constitutional question."). In sum, the Court finds that Petitioner's decision not to appeal the Immigration Judge Orders to the BIA does not preclude the habeas relief he seeks here.

Next, Petitioner and Respondents concede that § 1226 governs Petitioner's detention. Section 1226 governs the detention of noncitizens who are already present in the United States and are placed in removal proceedings, as is the case here. *See Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) ("[Section] 1226 applies to [noncitizens] already present in the United States" and "creates a default rule for those aliens."); 8 U.S.C. § 1226(a). With the exception of certain narrowly defined provisions requiring detention of individuals with specified criminal history, § 1226 permits the Attorney General to detain noncitizens pending a decision on removability or to release them on bond or conditional parole. *See* 8 U.S.C. § 1226(a)(2)(A)–(B); § 1226(c)(1)– (4); *Jennings*, 583 U.S. at 303 ("1226(a) ... permit[s] ... but [does] not requir[e] ... the Attorney General to issue warrants for [the] arrest and detention [of]" noncitizens already present in the United States; "Section 1226(a) also permits the Attorney General to release those [noncitizens] on bond[.]").

Having established that Petitioner is detained pursuant to § 1226(a), the question becomes what process is due in the circumstances presented here.  Petitioner has been in immigration custody since August 2025.  On September 25, 2025, Petitioner was provided with an individualized hearing and denied bond having been determined a "danger" to the community due to dismissed criminal charges.  On November 26, 2025, Petitioner's request for review of his bond denial was denied based on no "material change."  Petitioner remains in immigration detention for what now approaches seven months.  In the meantime, Petitioner's removal proceedings, while presumably ongoing, are unspecified and indefinite.  Moreover, it appears that Petitioner's asylum proceedings remain viable albeit delayed due to being moved about during his detention.

Section 1226 provides that the Attorney General "may continue to detain the arrested alien" pending a decision on removal.  In *Zadvydas*, the Supreme Court considered indefinite detention in an immigration context and found a "serious constitutional problem aris[es] out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty."  While the Court in *Zadvydas* considered the legality of indefinite detention pursuant to a different statute—8 U.S.C. § 1231(a)(6), as opposed to deferred action and discretionary detention under 8 U.S.C. § 1226(a)—the similar discretionary language of the statutes makes the constitutional concerns applicable here.  The Court there held that a noncitizen may only be detained so long as is "reasonably necessary to bring about [their] removal from the United States" and that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  533 U.S. at 689, 699-700.  And six months was found to be presumptively reasonable.  *Id.* at 702.  After the six-month mark, if a noncitizen provides good reason to believe their removal is not "significantly likely in the reasonably foreseeable future[,]"

the burden shifts to the government to rebut this showing or release the noncitizen. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (citing *Zadvydas*, 533 U.S. at 701)).

The Court finds there is no evidence that Petitioner's removal is reasonably foreseeable. On the contrary, Petitioner has been in immigration custody for over six months while his removal proceedings remain in limbo and his asylum proceedings remain viable. The Court finds, therefore, that Petitioner is being held in indefinite detention not authorized by law.

## V.  RECOMMENDATION

 Based on the foregoing, the Court recommends as follows:

1.     That Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED IN PART**;

2.     That Petitioner be granted immediate release without restraints beyond those that existed before his unlawful detention;

3.     That Respondents return all of Petitioner's seized belongings;

4.     That Respondents shall not re-detain Petitioner without a pre-deprivation hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a), at which the Government must prove by clear and convincing evidence that Petitioner is a danger or flight risk;

5.     That Respondents file a Notice of Compliance with this Order as soon as practicable after Petitioner's release;

6.     That Petitioner submit an application for costs and fees within 30 days of a final order pursuant to 28 U.S.C. § 2412, to which Respondents may reply within fourteen (14) days.

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

9

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**