# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NUNEZ LOPEZ, NEYDER ENRIQUEZ,**

  **Petitioner,**

  **vs.**          **Civ. No. 26cv641  JB/JFR**

**KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security; PAMELA BONDI, in her official
Capacity as Attorney General of the United
States; TODD LYONS, in his official capacity
as Acting Director and Senior Official
Performing Duties of the Director of U.S.
Immigration and Customs Enforcement;
JOEL D. GARCIA, in his official capacity as
Field Office Director of the El Paso Field
Office of U.S. Immigration and Customs
Enforcement, Enforcement and Removal
Operations; GEORGE DEDOS, in his official
capacity as Warden of the Cibola County
Processing Center,**

  **Respondents.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Petitioner's *Petition for Habeas Corpus*, filed

March 4, 2026.  Doc. 1.  On March 18, 2026, the Federal Respondents filed a Response to the

---

[1] By an Order of Reference Relating to Immigration Habeas Corpus Proceedings filed March 12, 2026, the presiding judge, United States District Judge James O. Browning, referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case.  Doc. 4; *accord* 28 U.S.C. §§ 636(b)(1)(B), (b)(3); *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990).

Petition for Writ of Habeas Corpus.[2]  Doc. 6.  For the reasons set forth below, the undersigned recommends that the Petition (Doc. 1) be **GRANTED IN PART**.

### I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a 36 year old citizen of Venezuela.  Doc. 1 at 1, ¶ 1.  He entered the United States on or about December 18, 2021, with a visitor visa.  *Id.*  Petitioner was included as a derivative beneficiary on his husband's I-589 application for asylum at the end of February 2023.  *Id.*  Petitioner was living in New York and working lawfully.  *Id.* at ¶ 2.  On August 19, 2025, Petitioner was falsely accused of Public Lewdness and Exposure of a Person and arrested at Penn Central train station.[3]  *Id.*  No charges were pursued.  *Id.*  Petitioner, however, along with approximately 20 other individuals, was transferred into ICE custody.  *Id.* at 2, ¶ 2.  Petitioner was moved to the El Paso Detention Center and more recently transferred to the Cibola Detention Center.  *Id.* at ¶ 3.  Petitioner is detained pursuant to 8 U.S.C. § 1226(a).  *Id.* at 7, ¶ 26.

Petitioner was issued a Notice to Appear charging him as being admitted into the United States but subject to removal for overstaying his period of authorized stay.  *Id.* at 2, ¶ 4.  On September 25, 2025, Petitioner sought an individualized custody determination and his release was denied on grounds he was a "danger" to the community due to the dismissed criminal charges.  *Id.* at ¶ 5.  On November 26, 2025, Petitioner's request for review was denied because there had been no "material change" in circumstances.  *Id.*  On January 21, 2026, while still in El Paso, Petitioner was scheduled for a master calendar hearing on April 8, 2026, and anticipated

---

[2] Counsel for the Federal Respondents do not represent the warden of the detention facility, as it is a private facility, and the warden is not a federal employee.  Doc. 6 at 1 n.1.  However, all arguments made on behalf of the remaining respondents would apply equally to the warden.  *Id.*

[3] Petitioner states it was reported that his arrest at Penn Central, along with approximately 200 other men, was believed to be discriminatory tactics against gay men.  Doc. 1 at 2, ¶ 2.

being scheduled for a hearing to present his asylum case. *Id.* at 2-3, ¶ 7. Petitioner's being

moved to Cibola Detention Center begins his case anew with a new judge. *Id.*

Prior to his detention, Petitioner was complying with all the immigration requirements,

had timely applied for asylum, obtained his work authorization, and was awaiting his interview

with USCIS. *Id.* at 3, ¶ 8. Petitioner has been detained for over six months and removal

proceedings remain ongoing. *Id.* at 7, ¶ 28.

Petitioner argues that his ongoing detention has become prolonged and constitutionally

excessive in relation to its regulatory purpose in violation of the Due Process Clause of the Fifth

Amendment. *Id*. at ¶ 26. Petitioner argues that detention under § 1226(a) may be justified only

to ensure appearance at proceedings and to protect the community, and may not become punitive

or arbitrary. *Id.* at ¶ 27. Petitioner argues that as detention grows prolonged, due process

requires meaningful review to ensure continued confinement remains justified. *Id.* (citing

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

Here, Petitioner argues that he has now been detained for over six months, his removal

proceedings remain ongoing, and his continued detention is likely to persist for an indeterminate

period of time. *Id.* at ¶ 28. Petitioner argues that his continued detention is not justified because

(1) he has been living in the United States for almost five years; (2) he has complied with all

prior immigration obligations and presents neither a flight risk nor a danger to the community;

(3) less restrictive alternatives to detention are available to ensure his appearance at hearings,

including reporting requirements or electronic monitoring; and (4) the prolonged duration of his

detention is through no fault of his own but instead the result of delays in proceedings, forum

shopping, and administrative processing. *Id.* at 8, ¶ 30. Petitioner further argues that due

process requires that immigration custody determinations must be based on reliable and

probative evidence and that reliance here on dismissed charges is inappropriate.  *Id.* at ¶ 32.

Petitioner is not seeking review of the discretionary bond decision, but challenges the

constitutionality of his continued detention.  *Id.* at ¶ 33.

Petitioner requests this Court (1) grant his Petition and direct Respondents to immediately

release him from custody or, in the alternative, to hold a prompt bond hearing to determine

whether Petitioner should remain in custody; (2) enter preliminary and permanent injunctive

relief enjoining Respondents from further unlawful detention of Petitioner; (3) issue a temporary

restraining order and permanent injunction preventing Respondents from transporting Petitioner

outside the United States or outside the judicial district; (4) order service and directing

Respondents to respond; and (5) award Petitioner's attorney fees pursuant to the Equal Access to

Justice Act.  *Id.* at 9.

On March 6, 2026, the Court issued an Order to Answer.[4]  Doc. 3.

On March 18, 2026, Respondents filed a Response.  Doc. 6.  Respondents request the

Court deny the Petition.  Respondents contend that Petitioner has failed to exhaust his

administrative remedies because he did not appeal the Immigration Judge Orders to the Board of

Immigration Appeals.[5]  *Id.* at 6-8.  Respondents contend that the legality of Petitioner's

underlying arrest is not presently relevant and not the source of his present custody which "flows

not from his arrest and initial post-arrest detention, but from the authority of the INA."  *Id.*

---

[4] In the Order to Answer, the Court ordered that Respondents are prohibited from transferring Petitioner outside the District of New Mexico while this proceeding is pending in order to ensure the Court retains jurisdiction in this matter. Doc. 3 at 2.

[5] Petitioner states that he did not appeal the IJ bond decisions to the BIA due to the extensive wait times.  Doc. 1 at 4, ¶ 12.  He further explains had he appealed it would likely still be pending or summarily dismissed due to the extensive backlog. *Id.*  Subsequent to Petitioner's filing of his Petition, the Immigration Court found Petitioner removable.  Doc. 12-1.  Petitioner has appealed the removal order to the BIA.  Doc. 13.  As such, Respondents' exhaustion argument is moot.

(citing 8 U.S.C. 1225(b)(2)).  Respondents contend "the Court should find that Section 1226 applies because Petitioner entered the country with a visitor visa and overstayed the amount of time permitted with said visa."  *Id.* at 2.  Respondents contend that Petitioner has already received an individualized detention hearing and that the Immigration Judge's discretionary judgment is not subject to judicial review.  *Id.* at 11.  Respondents further contend that should the Court find that Section 1226 applies that "the appropriate relief, if not denial of the Petition for Writ of Habeas Corpus, would be a bond review before the U.S. Immigration Court, rather than immediate release, even though this would be the third bond review."  *Id.* at 3, 12.

Respondents contend that Petitioner should not be awarded attorney fees and costs under the Equal Access to Justice Act because the Government's position to mandatorily detain Petitioner is substantially justified.  *Id.* at 12-13.

On March 26, 2026, the undersigned entered Proposed Findings and Recommended Disposition.  Doc. 7.

On June 4, 2026, the undersigned entered an Order Withdrawing Proposed Findings and Recommended Disposition and for Status Report.  Doc. 11.

On June 8, 2026, Respondents submitted a Status Report informing the Court that on May 27, 2026, the Immigration Court found Petitioner removeable.  Doc. 12-1.  The Order of Removal indicates that Petitioner's application for asylum was denied; that his application for withholding of removal under INA § 241(b)(2) was denied; and that his application for withholding of removal under the Convention Against Torture was denied.  *Id.*  The Immigration Court ordered Petitioner removed to Venezuela.  *Id.*

On June 27, 2026, Petitioner submitted a Status Report informing the Court that on June 11, 2026, he filed an appeal of the removal order with the Board of Immigration Appeals. Doc. 13.

### III.  LEGAL STANDARD

The All Writs Act, as the name implies, provides federal courts with general authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions . . . ."  28 U.S.C. § 1651(a) (emphasis added).  Available writs include, *inter alia*, mandamus, habeas corpus, certiorari, quo warranto, and prohibition—antiquatedly termed "prerogative writs."  *See generally Withrow v. Williams*, 507 U.S. 680, 716 (1993) (Scalia & Thomas, JJ., concurring in part) ("In English law, habeas corpus was one of the so-called 'prerogative' writs, which included the writs of mandamus, certiorari, and prohibition." (citations omitted)).

Additionally, 28 U.S.C. § 2241(a) provides federal courts the jurisdiction to grant a writ of habeas corpus to "release from unlawful physical confinement," *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973), a petitioner demonstrating "by a preponderance of the evidence," *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (per curiam), the existence of one of the five circumstances enumerated in 28 U.S.C. § 2241(c).  Relevant here, a petition for a writ of habeas corpus raised pursuant to 28 U.S.C. § 2241(c)(3) seeks release from federal custody that is "in violation of the Constitution or laws or treaties of the United States . . . ."

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).  This includes immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Rasul v. Bush*, 542 U.S. 466, 483-84 (2004) ("[Noncitizen] Petitioners contend that they are being held in federal custody in violation of the laws of the

6

United States. . . .  Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004).

## IV.  ANALYSIS

Petitioner and Respondents concede that § 1226 governs Petitioner's detention.  Section 1226 governs the detention of noncitizens who are already present in the United States and are placed in removal proceedings, as is the case here.  *See Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) ("[Section] 1226 applies to [noncitizens] already present in the United States" and "creates a default rule for those aliens."); 8 U.S.C. § 1226(a).  With the exception of certain narrowly defined provisions requiring detention of individuals with specified criminal history, § 1226 permits the Attorney General to detain noncitizens pending a decision on removability or to release them on bond or conditional parole.  *See* 8 U.S.C. § 1226(a)(2)(A)–(B); § 1226(c)(1)– (4); *Jennings*, 583 U.S. at 303 ("1226(a) ... permit[s] ... but [does] not requir[e] ... the Attorney General to issue warrants for [the] arrest and detention [of]" noncitizens already present in the United States; "Section 1226(a) also permits the Attorney General to release those [noncitizens] on bond[.]").  Under federal regulations, noncitizens detained under § 1226(a) are entitled to individualized bond hearings at the outset of detention.  *Jennings*, 583 U.S. at 306, 138 S. Ct. at 847 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).  Section 1226(a) continues to govern detention until the Immigration Judge's order becomes administratively final.  An order becomes administratively final only upon the completion of administrative review – either when the time to appeal expires or when the BIA dismisses the appeal.  *See* 8 C.F.R. § 1241.1(a).

Subsequent to Petitioner filing his Petition for Writ of Habeas Corpus, the Immigration Court, on May 27, 2026, entered a removal order.  Doc. 12-1.  On June 11, 2026, Petitioner filed an appeal.  Doc. 13.  Petitioner's removal order, therefore, is not yet final.  Accordingly, the

7

Attorney General "may continue to detain the arrested alien" pending a decision on removal. 8 U.S.C. § 1226(a).   Because Petitioner's detention under § 1226(a) is lawful pending a final order of removal, the six-month "presumptively reasonable" detention period set forth in *Zadvydas*, 533 U.S. at 701, does not yet govern.  *Zadvydas* addressed post-removal-order detention of noncitizens who could not be removed in the reasonably foreseeable future.  *Id.* Detention under § 1226(a) differs from the indefinite detention at issue in *Zadvydas* because it is tied to the completion of removal proceedings.  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008).  Those proceedings are "subject to strict procedural rules," providing an "independent, external constraint" that ensures resolution within a reasonable period.  *Id.*  Here, Petitioner's removal order remains subject to ongoing administrative review before the BIA.  As such, Petitioner is properly detained under § 1226(a).

Once Petitioner is subject to a final order of removal, detention is governed by *Zadvydas*, 533 U.S. at 682, and 8 U.S.C. § 1231.  At the time, the Government is expected to secure a noncitizen's removal within 90 days.  *Id.*  "During the 90-day removal period, . . . [the noncitizen] must be held in custody."  *Zadvydas*, 533 U.S. at 683 (citing § 1231).  After that, the Government may continue detaining the noncitizen only for as long as is "reasonably necessary" to secure their removal.  *Id.,* see 8 U.S.C. § 1231(a)(6).  The Supreme Court determined that a six-month detention period is presumptively reasonable.  *Zadvydas*, 533 U.S. at 701.  "After this 6-month period, once the [petitioner] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut [th]e showing" that the custody is unconstitutional."  *Id.* at 701.

The question remains, however, at what point does Petitioner's mandatory detention under § 1226(c) becomes unconstitutional and whether the Due Process Clause applies and

requires a bond hearing to determine whether Petitioner should remain in custody.  "Freedom

from imprisonment – from government custody, detention, or other forms of physical restraint –

lies at the heart of the liberty that Clause protects."  *Zadvydas*, 533 U.S. at 690.  The Due Process

Clause's protections extend to all persons within the United States, including noncitizens,

"whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.* at 693 (emphasis

added).  The Tenth Circuit has recognized that inadmissible aliens in physical custody in the

United States enjoy some procedural and substantive due process protections under the Fifth

Amendment.  *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th  Cir. 1981).

At present, there is no binding authority that squarely addresses whether Petitioner's

mandatory detention under § 1226(c) without a bond hearing violates the Fifth Amendment.  In

*Zadvydas*, the Supreme Court addressed a challenge to prolonged detention under 8 U.S.C. §

1231(a)(6) and held:

> We do have reason to believe, however, that Congress previously doubted the
> constitutionality of detention for more than six months.  Consequently, for the sake
> of uniform administration in the federal courts, we recognize that period.  After this
> 6—month period, once the alien provides good reason to believe that there is no
> significant likelihood of removal in the reasonably foreseeable future, the
> Government must respond with evidence sufficient to rebut that showing.

533 U.S. at 701 (internal quotation marks and citation omitted).

However, in *Demore v. Kim*, 538 U.S. 510, 529 (2003), the Supreme Court rejected a due

process challenge to § 1226(c) and distinguished *Zadvydas* because, unlike indefinite detention

pending removal under § 1231(a)(6), mandatory detention under § 1226(c) has a "definite

termination point," *i.e.*, the conclusion of removal proceedings.  The Court held that "[d]etention

during removal proceedings is a constitutionally permissible part of that process."  *Id.* at 531.

In *Jennings*, the Supreme Court rejected the Court of Appeals' construction of § 1226(c)

"as imposing an implicit 6-month time limit on an alien's detention" and remanded the case.  583

U.S. at 292.  As the Court of Appeals noted on remand, however, the Supreme court "declined to reach the constitutional question" and "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018). "Since the *Rodriguez* remand, there has been a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." *Lopez v. Garland*, 631 F. Supp. 3d 870, 876 (E.D. Cal. 2022) (internal quotation marks and citation omitted).

Because neither the Court of Appeals nor the Supreme Court have provided guidance explaining when a noncitizen's mandatory detention under § 1226(c) becomes unconstitutional, courts in this Circuit have used the general due process assessment under *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether due process requires a bond hearing.  *See, e.g.*, *Hernandez-Parrilla v. de Anda-Ybarra*, 2025 U.S. Dist. LEXIS 258579, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025); *Barreno v. Baltasar*, 2025 U.S. Dist. LEXIS 226973, 2025 WL 3190936, at *3 (D. Colo. Nov. 14, 2025); *Garcia Cortes v. Noem*, 2025 U.S. Dist. LEXIS 181582, 2025 WL 2652880, at *4 (D. Colo. Sept. 16, 2025).  In determining the process due an individual, *Mathews* requires the Court to balance (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. 424 U.S. at 335.

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after living freely outside of immigration custody.  Here, Petitioner is a derivative beneficiary of his husband's I-589 application for

asylum and has been living and working lawfully in the United States for almost five years and complying with all prior immigration obligations.  He has ties to family and community.  His private interest in freedom from detention is therefore substantial.

Looking to the second *Mathews* factor, the risk of erroneous deprivation is considerable in this case where Petitioner claims that Respondents have improperly relied on dismissed charges to justify Petitioner's continued detention.  That said, Petitioner is properly subject to mandatory detention under the applicable statute.  In considering the probable value of additional or different procedural safeguards, the equities tip in favor of a bond hearing, rather than immediate release, where Petitioner bears the burden of showing why release on bond is warranted in this case.  This helps ensure Petitioner is not erroneously deprived of his liberty interest in release while recognizing that detention is mandated by the statute.

Finally, the third *Mathews* factor favors Petitioner as well. While the United States Government certainly has a strong interest in enforcing its immigration laws, its interest in detaining noncitizens absent a rational reason for doing so is low.  The justification for mandatory indefinite detention of a noncitizen carries little weight in this case, where Petitioner's indefinite, ongoing detention of almost eleven months, with no reasonably foreseeable end in sight, is constitutionally excessive in relation to the United States Government's legitimate, nonpunitive purpose of facilitating removal.  First, there is reason to believe that the BIA may not review Petitioner's case in the reasonably foreseeable future given the volume of appeals currently before the BIA.

> As the Department of Justice recently stated, after the Attorney General reduced the BIA's size by nearly one half in early 2025, there has been an "unprecedented B[IA] caseload."  Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026).  Indeed, "between fiscal year 2015 and the end of fiscal year 2025, the B[IA]'s pending case load increased more than five-fold— from 37,285 pending appeals to 202,946 pending appeals," leaving the BIA "at a

11

> point where, even were it to have additional resources and better management, ... it would not be able to keep up with incoming filings while tackling the backlog in any meaningful way." *Id.* (citing Executive Office of Immigration Review ("EOIR"), Adjudication Statistics: All Appeals Filed, Completed, and Pending (Nov. 18, 2025), https://www.justice.gov/eoir/media/1344986/dl?inline[https://perma.cc/88C5-MU4N]). Thus, "the B[IA] largely functions now as simply a vessel for further delay of the eventual resolution of [a noncitizen's] case." *Id.* at 5271.

*Serrano v. Scott*, 2026 WL 1674357, at *3 (W.D. Wash. 2026). Second, Petitioner's appeal to the BIA could result in a reversal or an appeal to the Tenth Circuit Court of Appeals—proceedings that could take years. Requiring a bond hearing does not impose a significant fiscal or administrative burden on the Government, nor does it undermine the Government's "sovereign prerogative ... to decide which [noncitizens] to admit[,]" *Landon v. Plasencia*, 459 U.S. 21, at 32 (1982), as Petitioner's removal proceedings—and the Government's discretion over them—will continue regardless of his detention status.

On balance, the Court finds that under the three *Mathews* factors, the Due Process Clause entitles Petitioner to an opportunity to seek release on bond at a custody redetermination hearing. However, given that the statutory scheme applicable to Petitioner contemplates mandatory detention, the Court recommends Petitioner bear the burden of demonstrating that he is not a flight risk or a danger to his community.

## V.  <u>RECOMMENDATION</u>

Based on the foregoing, the undersigned recommends finding that § 1226(c) governs Petitioner's mandatory detention. The undersigned further recommends finding that Petitioner's prolonged detention violates his substantive due process rights under the Fifth Amendment. In the Petition, Petitioner argues that he is entitled to immediate release or, in the alternative, an individualized bond hearing before an IJ. Respondents also contend that the appropriate relief, if not denial, would be a bond review before an IJ rather than immediate release. The Court,

therefore, recommends that Respondents be ordered to provide Petitioner an individualized bond hearing before a neutral IJ within fourteen (14) days of the Court's adoption of this recommendation.  If Petitioner is not afforded a bond hearing within that time, the Court recommends Petitioner's immediate release.  Finally, the Court recommends that Respondents file a status report regarding Petitioner's bond hearing or release twenty-one (21) days after the adoption of this recommendation.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**