# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NUNEZ LOPEZ, NEYDER ENRIQUEZ,**

      **Petitioner,**

      **vs.**                                    **Civ. No. 26cv641  JB/JFR**

**KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; PAMELA BONDI, in her official Capacity as Attorney General of the United States; TODD LYONS, in his official capacity as Acting Director and Senior Official Performing Duties of the Director of U.S. Immigration and Customs Enforcement; JOEL D. GARCIA, in his official capacity as Field Office Director of the El Paso Field Office of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; GEORGE DEDOS, in his official capacity as Warden of the Cibola County Processing Center,**

      **Respondents.**

## AMENDED MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Petitioner's *Petition for Habeas Corpus*, filed March 4, 2026.  Doc. 1.  On March 18, 2026, the Federal Respondents filed a Response to the Petition for Writ of Habeas Corpus.[2]  Doc. 6.

---

[1] By an Order of Reference Relating to Immigration Habeas Corpus Proceedings filed March 12, 2026, the presiding judge, United States District Judge James O. Browning, referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case.  Doc. 4; *accord* 28 U.S.C. §§ 636(b)(1)(B), (b)(3); *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990).

[2] Counsel for the Federal Respondents do not represent the warden of the detention facility, as it is a private facility, and the warden is not a federal employee.  Doc. 6 at 1 n.1.  However, all arguments made on behalf of the remaining respondents would apply equally to the warden.  *Id.*

On July 9, 2026, the undersigned entered Proposed Findings and Recommended Disposition ("PFRD") finding that Petitioner's prolonged detention violates his due process rights under the Fifth Amendment. Doc. 14. On July 22, 2026, Petitioner timely filed Objections to Magistrate's Proposed Findings and Recommended Disposition. Doc. 15. Therein, Petitioner asserted that the Court improperly conducted its due process analysis pursuant to 8 U.S.C. 1226(c) which was inconsistent with the Court's finding and the parties' agreement that Petitioner's discretionary detention is governed by 8 U.S.C. 1226(a). *Id.* Petitioner further asserts that due process here requires that Petitioner be provided a meaningful bond hearing at which the Government bears the burden of proving that Petitioner is not a flight risk or a danger to the community. *Id.*

There being no final judgment in this matter, the undersigned, acting under the Court's inherent authority to reconsider its previous rulings and on Order of Reference from United States District Judge Browning to conduct proceedings, *see* 28 U.S.C. § 636, now amends its Proposed Findings and Recommended Disposition and provides analysis pursuant to 8 U.S.C. 1226(a) regarding Petitioner's due process rights under the Fifth Amendment. *See generally Dietz v. Bouldin*, 136 S.Ct. 1885, 1891-92 (2016) (discussing Court's inherent power so as to achieve the orderly and expeditious disposition of case).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a 36 year old citizen of Venezuela. Doc. 1 at 1, ¶ 1. He entered the United States on or about December 18, 2021, with a visitor visa. *Id.* Petitioner was included as a derivative beneficiary on his husband's I-589 application for asylum at the end of February 2023. *Id.* Petitioner was living in New York and working lawfully. *Id.* at ¶ 2. On August 19, 2025,

Petitioner was falsely accused of Public Lewdness and Exposure of a Person and arrested at Penn Central train station.[3]  *Id.*  No charges were pursued.  *Id.*  Petitioner, however, along with approximately 20 other individuals, was transferred into ICE custody.  *Id.* at 2, ¶ 2.  Petitioner was moved to the El Paso Detention Center and more recently transferred to the Cibola Detention Center.  *Id.* at ¶ 3.  Petitioner is detained pursuant to 8 U.S.C. § 1226(a).  *Id.* at 7, ¶ 26.

Petitioner was issued a Notice to Appear charging him as being admitted into the United States but subject to removal for overstaying his period of authorized stay.  *Id.* at 2, ¶ 4.  On September 25, 2025, Petitioner sought an individualized custody determination and his release was denied on grounds he was a "danger" to the community due to the dismissed criminal charges.  *Id.* at ¶ 5.  On November 26, 2025, Petitioner's request for review was denied because there had been no "material change" in circumstances.  *Id.*  On January 21, 2026, while still in El Paso, Petitioner was scheduled for a master calendar hearing on April 8, 2026, and anticipated being scheduled for a hearing to present his asylum case.  *Id.* at 2-3, ¶ 7.  Petitioner's being moved to Cibola Detention Center begins his case anew with a new judge.  *Id.*

Prior to his detention, Petitioner was complying with all the immigration requirements, had timely applied for asylum, obtained his work authorization, and was awaiting his interview with USCIS.  *Id.* at 3, ¶ 8.  Petitioner has been detained for over six months and removal proceedings remain ongoing.  *Id.* at 7, ¶ 28.

Petitioner argues that his ongoing detention has become prolonged and constitutionally excessive in relation to its regulatory purpose in violation of the Due Process Clause of the Fifth Amendment.  *Id.* at ¶ 26.  Petitioner argues that detention under § 1226(a) may be justified only

---

[3] Petitioner states it was reported that his arrest at Penn Central, along with approximately 200 other men, was believed to be discriminatory tactics against gay men.  Doc. 1 at 2, ¶ 2.

to ensure appearance at proceedings and to protect the community, and may not become punitive or arbitrary. *Id.* at ¶ 27. Petitioner argues that as detention grows prolonged, due process requires meaningful review to ensure continued confinement remains justified. *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

In his Petition, Petitioner argues that he has been detained for over six months, his removal proceedings remain ongoing, and his continued detention is likely to persist for an indeterminate period of time. *Id.* at ¶ 28. Petitioner argues that his continued detention is not justified because (1) he has been living in the United States for almost five years; (2) he has complied with all prior immigration obligations and presents neither a flight risk nor a danger to the community; (3) less restrictive alternatives to detention are available to ensure his appearance at hearings, including reporting requirements or electronic monitoring; and (4) the prolonged duration of his detention is through no fault of his own but instead the result of delays in proceedings, forum shopping, and administrative processing. *Id.* at 8, ¶ 30. Petitioner further argues that due process requires that immigration custody determinations must be based on reliable and probative evidence and that reliance here on dismissed charges is inappropriate. *Id.* at ¶ 32. Petitioner is not seeking review of the discretionary bond decision, but challenges the constitutionality of his continued detention. *Id.* at ¶ 33.

Petitioner requests this Court (1) grant his Petition and direct Respondents to immediately release him from custody or, in the alternative, to hold a prompt bond hearing to determine whether Petitioner should remain in custody; (2) enter preliminary and permanent injunctive relief enjoining Respondents from further unlawful detention of Petitioner; (3) issue a temporary restraining order and permanent injunction preventing Respondents from transporting Petitioner outside the United States or outside the judicial district; (4) order service and directing

Respondents to respond; and (5) award Petitioner's attorney fees pursuant to the Equal Access to Justice Act. *Id.* at 9.

On March 6, 2026, the Court issued an Order to Answer.[4]  Doc. 3.

On March 18, 2026, Respondents filed a Response.  Doc. 6.  Respondents request the Court deny the Petition.  Respondents contend that Petitioner has failed to exhaust his administrative remedies because he did not appeal the Immigration Judge Orders to the Board of Immigration Appeals.[5]  *Id.* at 6-8.  Respondents contend that the legality of Petitioner's underlying arrest is not presently relevant and not the source of his present custody which "flows not from his arrest and initial post-arrest detention, but from the authority of the INA."  *Id.* (citing 8 U.S.C. 1225(b)(2)).  Respondents contend "the Court should find that Section 1226 applies because Petitioner entered the country with a visitor visa and overstayed the amount of time permitted with said visa."  *Id.* at 2.  Respondents contend that Petitioner has already received an individualized detention hearing and that the Immigration Judge's discretionary judgment is not subject to judicial review.  *Id.* at 11.  Respondents further contend that should the Court find that Section 1226 applies that "the appropriate relief, if not denial of the Petition for Writ of Habeas Corpus, would be a bond review before the U.S. Immigration Court, rather than immediate release, even though this would be the third bond review."  *Id.* at 3, 12.

---

[4] In the Order to Answer, the Court ordered that Respondents are prohibited from transferring Petitioner outside the District of New Mexico while this proceeding is pending in order to ensure the Court retains jurisdiction in this matter. Doc. 3 at 2.

[5] Petitioner states that he did not appeal the IJ bond decisions to the BIA due to the extensive wait times.  Doc. 1 at 4, ¶ 12.  He further explains had he appealed it would likely still be pending or summarily dismissed due to the extensive backlog. *Id.*  Subsequent to Petitioner's filing of his Petition, the Immigration Court found Petitioner removable.  Doc. 12-1.  Petitioner has appealed the removal order to the BIA.  Doc. 13.  As such, Respondents' exhaustion argument is moot.

Respondents contend that Petitioner should not be awarded attorney fees and costs under the Equal Access to Justice Act because the Government's position to mandatorily detain Petitioner is substantially justified. *Id.* at 12-13.

On March 26, 2026, the undersigned entered Proposed Findings and Recommended Disposition. Doc. 7. On June 4, 2026, the undersigned entered an Order Withdrawing Proposed Findings and Recommended Disposition and for Status Report. Doc. 11.

On June 8, 2026, Respondents submitted a Status Report informing the Court that on May 27, 2026, the Immigration Court found Petitioner removeable. Doc. 12-1. The Order of Removal indicates that Petitioner's application for asylum was denied; that his application for withholding of removal under INA § 241(b)(2) was denied; and that his application for withholding of removal under the Convention Against Torture was denied. *Id.* The Immigration Court ordered Petitioner removed to Venezuela. *Id.*

On June 27, 2026, Petitioner submitted a Status Report informing the Court that on June 11, 2026, he filed an appeal of the removal order with the Board of Immigration Appeals. Doc. 13.

On July 14, 2026, Petitioner's request for change of custody status was denied. Doc. 15-1.[6]

## II.  LEGAL STANDARD

The All Writs Act, as the name implies, provides federal courts with general authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions . . . ." 28 U.S.C. § 1651(a) (emphasis added). Available writs include, *inter alia*, mandamus, habeas corpus,

---

[6] Petitioner asserts that absent a final order from the Court, a bond hearing lasting a mere few minutes was conducted on short notice and failed to provide any meaningful procedural safeguards contemplated by the Court, *i.e.,* a reasonable opportunity to prepare or present his case. Doc. 15 at 4-5.

certiorari, quo warranto, and prohibition—antiquatedly termed "prerogative writs." *See*

*generally Withrow v. Williams*, 507 U.S. 680, 716 (1993) (Scalia & Thomas, JJ., concurring in

part) ("In English law, habeas corpus was one of the so-called 'prerogative' writs, which

included the writs of mandamus, certiorari, and prohibition." (citations omitted)).

Additionally, 28 U.S.C. § 2241(a) provides federal courts the jurisdiction to grant a writ

of habeas corpus to "release from unlawful physical confinement," *Preiser v. Rodriguez*, 411

U.S. 475, 485 (1973), a petitioner demonstrating "by a preponderance of the evidence," *Beeler v.*

*Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (per curiam), the existence of one of the five

circumstances enumerated in 28 U.S.C. § 2241(c).  Relevant here, a petition for a writ of habeas

corpus raised pursuant to 28 U.S.C. § 2241(c)(3) seeks release from federal custody that is "in

violation of the Constitution or laws or treaties of the United States . . . ."

The Constitution guarantees that the writ of habeas corpus is "available to every

individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

(citing U.S. CONST. art. I, § 9, cl. 2).  This includes immigration-related detention. *Zadvydas v.*

*Davis*, 533 U.S. 678, 687 (2001); *Rasul v. Bush*, 542 U.S. 466, 483-84 (2004) ("[Noncitizen]

Petitioners contend that they are being held in federal custody in violation of the laws of the

United States. . . .  Section 2241, by its terms, requires nothing more."), *judgment entered*, No.

04A41, 2004 WL 7372970 (U.S. July 16, 2004).

### III.  ANALYSIS

Petitioner and Respondents concede that § 1226 governs Petitioner's detention.  Section

1226 governs the detention of noncitizens who are already present in the United States and are

placed in removal proceedings, as is the case here.  *See Jennings v. Rodriguez*, 583 U.S. 281, 303

(2018) ("[Section] 1226 applies to [noncitizens] already present in the United States" and

"creates a default rule for those aliens."); 8 U.S.C. § 1226(a).  With the exception of certain narrowly defined provisions requiring detention of individuals with specified criminal history, § 1226 permits the Attorney General to detain noncitizens pending a decision on removability or to release them on bond or conditional parole.  *See* 8 U.S.C. § 1226(a)(2)(A)–(B); § 1226(c)(1)–(4); *Jennings*, 583 U.S. at 303 ("1226(a) ... permit[s] ... but [does] not requir[e] ... the Attorney General to issue warrants for [the] arrest and detention [of]" noncitizens already present in the United States; "Section 1226(a) also permits the Attorney General to release those [noncitizens] on bond[.]").  Under federal regulations, noncitizens detained under § 1226(a) are entitled to individualized bond hearings at the outset of detention.  *Jennings*, 583 U.S. at 306, 138 S. Ct. at 847 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).  Section 1226(a) continues to govern detention until the Immigration Judge's order becomes administratively final.  An order becomes administratively final only upon the completion of administrative review – either when the time to appeal expires or when the BIA dismisses the appeal.  *See* 8 C.F.R. § 1241.1(a).

Subsequent to Petitioner filing his Petition for Writ of Habeas Corpus, the Immigration Court, on May 27, 2026, entered a removal order.  Doc. 12-1.  On June 11, 2026, Petitioner filed an appeal.  Doc. 13.  Petitioner's removal order, therefore, is not yet final.  Accordingly, the Attorney General "may continue to detain the arrested alien" pending a decision on removal. 8 U.S.C. § 1226(a).  Because Petitioner's detention under § 1226(a) is lawful pending a final order of removal, the six-month "presumptively reasonable" detention period set forth in *Zadvydas*, 533 U.S. at 701, does not yet govern.  *Zadvydas* addressed post-removal-order detention of noncitizens who could not be removed in the reasonably foreseeable future.  *Id.* Detention under § 1226(a) differs from the indefinite detention at issue in *Zadvydas* because it is tied to the completion of removal proceedings.  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th

Cir. 2008). Those proceedings are "subject to strict procedural rules," providing an "independent, external constraint" that ensures resolution within a reasonable period. *Id.* Here, Petitioner's removal order remains subject to ongoing administrative review before the BIA. As such, Petitioner is properly detained under § 1226(a).

Once Petitioner is subject to a final order of removal, detention is governed by *Zadvydas*, 533 U.S. at 682, and 8 U.S.C. § 1231. At the time, the Government is expected to secure a noncitizen's removal within 90 days. *Id.* "During the 90-day removal period, . . . [the noncitizen] must be held in custody." *Zadvydas*, 533 U.S. at 683 (citing § 1231). After that, the Government may continue detaining the noncitizen only for as long as is "reasonably necessary" to secure their removal. *Id.,* see 8 U.S.C. § 1231(a)(6). The Supreme Court determined that a six-month detention period is presumptively reasonable. *Zadvydas*, 533 U.S. at 701. "After this 6-month period, once the [petitioner] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut [th]e showing" that the custody is unconstitutional." *Id.* at 701.

With the foregoing in mind, the question nonetheless remains at what point prolonged discretionary detention under § 1226(a) implicates due process concerns and requires procedural protections in the form of an additional bond hearing at which the government bears the burden of prolonged detention. The Tenth Circuit has recognized that inadmissible aliens in physical custody in the United States enjoy some procedural and substantive due process protections under the Fifth Amendment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). As a non-citizen facing discretionary detention or release while removal proceedings are pending, (1) Petitioner has a liberty interest in freedom from immigration detention, and (2) it is necessary to afford him the opportunity to be heard regarding his release to ensure that any

deprivation of that protected liberty interest accords with due process. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (citation modified). The bond hearing process, codified at § 1226(a) and its related regulations provides such an opportunity to be heard.

The undersigned finds, however, that ordering a bond hearing, without more, does not ensure that Petitioner will receive complete and meaningful habeas relief. If the procedures used in the hearing are insufficient to protect non-citizens from erroneous deprivations of liberty, merely ordering a bond hearing will lead to further violations of their due process rights. The Court must investigate what it means to receive a § 1226(a) bond hearing as administered by immigration judges under current BIA precedent, specifically as to the burden and quantum of proof, in order to determine whether those procedures permit a non-citizen to be heard "in a meaningful manner," *Mathews*, 424 U.S. at 333, and thereby comport with due process.

The Court is not acting beyond its jurisdiction or its authority in making such an inquiry. First, even though under the INA, "a district court has no jurisdiction to consider a habeas petitioner's challenge to the decision to either grant or deny bond," *Kumar v. De Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026) (citing 8 U.S.C. § 1226(e)), the Court retains "habeas jurisdiction over constitutional claims or questions of law" relating to the bond hearing. *Hernandez Casallas v. Jones*, No. CIV-26-53-J, 2026 WL 324646, at *2 (W.D. Okla. Feb. 6, 2026). *See Demore v. Kim*, 538 U.S. 510, 517 (2003) (The "clear text [of § 1226(e)] does not bar respondent's constitutional challenge "). Second, Congress has granted courts the authority to "summarily hear and determine the facts" when considering an application for a writ of habeas corpus and to "dispose of the matter as law and justice require."

10

28 U.S.C. § 2241.  And the Supreme Court has advised that "[t]he very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."  *Harris v. Nelson*, 394 U.S. 286, 291 (1969); *see also Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (observing that habeas is "an adaptable remedy" and "its precise application and scope change[s] depending upon the circumstances"); *Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus is, at its core, an equitable remedy."); *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (holding that federal courts have "broad discretion in conditioning a judgment granting habeas relief").

As set forth fully below, the undersigned finds that bond hearings as they are currently administered by ICE do not comport with due process and that substitute procedures should be ordered, namely shifting the burden of proof to the Government to justify a non-citizen's detention.

Section 1226(a) does not specify who bears the burden of proving a non-citizen's eligibility for bond or what burden of proof applies.  Indeed, the only place in which the burden is addressed is in the regulation pertaining to the custody determination by the arresting ICE officer, 8 C.F.R. § 236.1(c)(8). However,

> the BIA ... adopted that standard for section 1226(a) bond hearings before an IJ.... *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999); *Matter of Guerra*, 24 I. & N. Dec. [37, 38 (B.I.A. 2006)].

> Accordingly, under current BIA precedent, a noncitizen detained under section 1226(a) must demonstrate "to the satisfaction of the Immigration Judge that he or she merits release on bond," *Matter of Guerra*, 24 I. & N. Dec. at 40, "even though section [1226(a)] does not explicitly contain such a requirement." *Matter of Adeniji*, 22 I. & N. Dec. at 1113.  To do so, the noncitizen must prove that he or she is neither a danger to the community nor a flight risk.  *See, e.g., Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 (B.I.A. 2020).  In contrast, the government "need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings." *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020).

*Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021). Thus, the bond hearings as currently administered provide non-citizens with some procedural protections against a deprivation of liberty. But those protections must be assessed against the requirements of the Constitution.

Neither the Supreme Court nor the Tenth Circuit has directly addressed whether requiring the non-citizen to bear the burden of proving that he is neither a danger to the community nor a flight risk at a § 1226(a) bond hearing violates due process. There is a split among the Circuits that have considered the question. The First Circuit has squarely held that at a § 1226(a) bond hearing, due process requires the government to bear the burden of proving the alien's dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. *Hernandez-Lara*, 10 F.4th at 39-40. The Second Circuit has similarly held that when an alien is subject to prolonged incarceration under § 1226(a), the appropriate remedy is a bond hearing at which the government bears the burden of proving dangerousness or flight risk by clear and convincing evidence. *Velasco Lopez v. Decker*, 978 F.3d 842, 855-57 (2d Cir. 2020). In contrast, the Ninth Circuit has held that due process does not require the government to bear the burden of proving dangerousness or flight risk when a non-citizen has been "subject to § 1226(a) and its bond determination processes from the onset of her detention." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211-12 (9th Cir. 2022). The Fourth Circuit and Third Circuit are substantially in accord. *See Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022) (concluding "the current procedures used for detention under § 1226(a) satisfy due process" and thus burden shifting was not required); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018) (finding that non-citizen was "granted meaningful process prior to filing his habeas petition" when he was "afforded a prompt bond hearing, as required by § 1226(a) and its implementing regulations" at which he bore the burden of proof, and "perceive[ing] no problem

12

with [the] distinction" between § 1226(a) placing the burden on the detainee and § 1226(c) shifting the burden to the government in certain circumstances).

The undersigned recommends that this Court follow the thorough and well-reasoned analyses of the First and Second Circuits, both of which evaluated the procedures for § 1226(a) bond hearings under the Supreme Court's three-factor balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  The *Mathews* factors aid courts in determining whether procedural protections meet the Constitutional requirements of due process.  *See Marin v. King*, 720 F. App'x 923, 940-41 (10th Cir. 2018); *see also J.B. v. Washington Cnty.*, 127 F.3d 919, 924 (10th Cir. 1997) ("to determine what process is constitutionally due, we look to three somewhat flexible demands of procedural due process [listing the *Mathews* factors.]").  The undersigned agrees that all three *Mathews* factors support affording Petitioner an additional and meaningful bond hearing at which the Government, rather than Petitioner, bears the burden of proof of establishing risk of flight and dangerousness.

The first *Mathews* factor is "the private interest that will be affected." 424 U.S. at 335. Here, "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty" interest in the Fifth Amendment's Due Process Clause. *Zadvydas*, 533 U.S. at 687-88. "In our society liberty is the norm, and detention ... is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Court finds that Petitioner has a significant private interest in remaining free from detention after living freely outside of immigration custody.  Here, Petitioner is a derivative beneficiary of his husband's I-589 application for asylum and had been living and working lawfully in the United States for almost five years and complying with all prior immigration obligations before being

13

detained.  He has ties to family and community.  His private interest in freedom from detention is therefore substantial.

The second *Mathews* factor is "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335.  "Procedural due process rules are shaped by the risk of error inherent in the truth-finding process."  *Velasco Lopez*, 978 F.3d at 852 (citing *Mathews*, 424 U.S. at 344).  The First Circuit observed five reasons that "a detainee often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound" due to the way that § 1226(a) hearings are conducted under current BIA precedent:

> [1] noncitizens have no right to be provided with counsel in immigration proceedings and very often cannot obtain counsel on their own, particularly if they are detained;
>
> [2] detained individuals will likely experience difficulty in gathering evidence on their own behalf;
>
> [3] noncitizens subject to immigration detention often lack full proficiency in English;
>
> [4] immigration law and procedures and the particular preferences of individual IJs are likely much better known to government representatives than to detainees; and
>
> [5] proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern.

*Hernandez-Lara*, 10 F.4th at 30-31 (citation modified); *see also Velasco Lopez*, 978 F.3d at 853 (observing that the ability of a detained non-citizen to obtain evidence for the bond hearing is constrained, especially compared to the "substantial resources" of the government in the form of "computerized access to numerous databases and to information collected by DHS, DOJ, and the FBI, as well as information in the hands of state and local authorities ... [and] broad regulatory authority to obtain it").  Thus, the second factor weighs heavily in favor of requiring substitute

14

procedures that would protect Petitioner from the risk of the erroneous deprivation of his liberty, such as shifting the burden of proof from the non-citizen to the Government.

The final *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. "The prompt execution of removal orders is a legitimate governmental interest, which detention may facilitate." *Hernandez-Lara*, 10 F.4th at 32. However, the government has no legitimate interest "in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight[,] [and] ... shifting the burden of proof to the Government to justify continued detention promotes the Government's interest ... in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854. Indeed, "limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention." *See Hernandez-Lara*, 10 F.4th at 33 (also noting the "substantial societal costs" of unnecessary detention, which "separates families and removes from the community breadwinners, caregivers, parents, siblings and employees"). "In short, given the risk that the current procedures lead to many instances of needless detention, entailing substantial social and financial costs, the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative." *Id.* Thus, the third factor also supports shifting the burden of proof to the government where Petitioner's detention is now nearing twelve months with no reasonably foreseeable end in sight,[7] and where Petitioner has raised

---

[7] First, there is reason to believe that the BIA may not review Petitioner's case in the reasonably foreseeable future given the volume of appeals currently before the BIA.

> As the Department of Justice recently stated, after the Attorney General reduced the BIA's size by nearly one half in early 2025, there has been an "unprecedented B[IA] caseload." Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026). Indeed,

legitimate questions regarding the Government's reliance on dismissed charges as a basis for his ongoing detention.

"In sum, the balance of the *Mathews* factors weighs in favor of [Petitioner]: The private interest affected is commanding; the risk of error from placing the burden of proof on the noncitizen is substantial; and the countervailing governmental interest is comparatively slight." *Id.* (citation modified).

Multiple district judges in this District and Circuit have come to the same conclusion. *See, e.g., Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1284 (D.N.M. Jan. 12, 2026) (District Judge Urias considering the *Mathews* factors, and concluding that "due process requires that [petitioner] be provided a bond hearing at which the Government bear the burden of proving that Petitioner is not a flight risk or a danger to the community."); *Mieles-Parraga v. Bondi*, No. 2:26-CV-00646-KG-JHR, 2026 WL 776489, at *2 (D.N.M. Mar. 19, 2026) (Chief Judge Gonzales utilizing same analysis); *Lopez-Romero v. Lyons*, No. 2:25-CV-01113-MIS-JHR, 2026 WL 92873, at *1 (D.N.M. Jan. 13, 2026) (Judge Strickland utilizing same analysis); *Abanil v. Baltazar*, No. 25-CV-4029-WJM-STV, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026) (finding that in the District of Colorado, "the weight of authority... is clear: it is the Government's burden

---

"between fiscal year 2015 and the end of fiscal year 2025, the B[IA]'s pending case load increased more than five-fold—from 37,285 pending appeals to 202,946 pending appeals," leaving the BIA "at a point where, even were it to have additional resources and better management, ... it would not be able to keep up with incoming filings while tackling the backlog in any meaningful way." *Id.* (citing Executive Office of Immigration Review ("EOIR"), Adjudication Statistics: All Appeals Filed, Completed, and Pending (Nov. 18, 2025), https://www.justice.gov/eoir/media/1344986/dl?inline[hrrps://perma.cc/88C5-MU4N). Thus, "the B[IA] largely functions now as simply a vessel for further delay of the eventual resolution of [a noncitizen's] case." *Id.* at 5271.

*Serrano v. Scott*, 2026 WL 1674357, at *3 (W.D. Wash. 2026). Second, Petitioner's appeal to the BIA could result in a reversal or an appeal to the Tenth Circuit Court of Appeals—proceedings that could take years. Requiring a bond hearing does not impose a significant fiscal or administrative burden on the Government, nor does it undermine the Government's "sovereign prerogative ... to decide which [noncitizens] to admit[,]" *Landon v. Plasencia*, 459 U.S. 21, at 32 (1982), as Petitioner's removal proceedings—and the Government's discretion over them—will continue regardless of his detention status.

16

to justify a noncitizen's continued detention at a bond hearing") (collecting cases); *Peña Becerra v. Sparks*, No. 2:26-CV-00212-JNP-DBP, 2026 WL 915439, at *7 (D. Utah Apr. 3, 2026) (finding petitioner met his burden to show a deprivation of his rights by his unlawful detention, ordering petitioner's release, and ordering that if respondents "seek to re-detain him, they must provide him with notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that [she] is a flight risk or danger to the community").

The undersigned, therefore, recommends that Petitioner be provided a meaningful bond hearing at which the Government bears the burden of proof to justify detention by showing Petitioner is a risk of flight or danger to the community.

Part and parcel of considering who bears the burden of proof is a determination of which standard of proof should apply.

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington v. Texas*, 441 U.S. 418, 423 (1979) (citation modified). "The Supreme Court has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for various types of civil detention." *Velasco Lopez*, 978 F.3d at 856 (citing *Addington*, 441 U.S. at 426, 432-33 (upholding the clear and convincing standard for civil confinement of individuals with severe mental illnesses); *Salerno*, 481 U.S. at 751 (noting that pretrial detention is permitted "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identifiable and articulable threat to an individual or the community"); *Foucha v. Louisiana*, 504

U.S. 71, 75-76 (1992) (requiring the same standard for involuntary civil commitment); *United States v. Comstock*, 560 U.S. 126, 130-31 (2010) (noting the same standard in upholding the constitutionality of a federal statute which permits continued confinement of a mentally ill, sexually dangerous prisoner beyond a date that the prisoner would otherwise be released). *But see Hernandez-Lara*, 10 F.4th at 41 (holding that "due process requires the government to either (1) prove by clear and convincing evidence that [the non-citizen] poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk").

District courts in this Circuit have adopted the clear-and-convincing-evidence standard when shifting the burden to the government for § 1226(a) bond hearings. *See e.g., Martinez Escobar v. Baltazar*, No. 26-cv-296-NYW, 2026 WL 503313, at *5 (D. Colo. Feb. 24, 2026) (collecting cases in District of Colorado imposing clear and convincing standard and imposing same); *Requejo Roman*, 816 F. Supp. 3d at 1284 ("[T]he standard of proof the Government must meet is one of clear and convincing evidence.") (citation modified).

Petitioner's rights under § 1226(a) and the Due Process Clause have been violated by his prolonged detention without the opportunity for a *meaningful* bond hearing. This Court can implement its flexible habeas jurisdiction to protect him from further erroneous deprivation of his fundamental liberty interest by providing adequate procedural protections. A bond hearing at which the Government bears the burden of proof to establish flight risk and/or dangerousness by clear and convincing evidence is an appropriate remedy.

## IV.  <u>RECOMMENDATION</u>

Based on the foregoing, the undersigned recommends finding that § 1226(a) governs Petitioner's discretionary detention. The undersigned further recommends finding that Petitioner's prolonged detention violates his due process rights under the Fifth Amendment. In

the Petition, Petitioner argues that he is entitled to immediate release or, in the alternative, an individualized and meaningful bond hearing before a neutral IJ conducted in a manner consistent with the requirements of due process.  Respondents also contend that the appropriate relief, if not denial, would be a bond review before an IJ rather than immediate release.  The Court, therefore, recommends:

1.    That Respondents provide Petitioner an individualized and *meaningful* bond hearing before a *neutral* IJ within seven (7) days of the Court's adoption of this recommendation and entry of a final order;

2.    That the Government shall bear the burden of justifying, by clear and convincing evidence, Petitioner's continued detention;

3.    That Respondents provide a minimum of three (3) days advance notice to Petitioner of the scheduled individualized bond hearing;

4.    That Petitioner be immediately released if he is not afforded an individualized and meaningful bond hearing within the time ordered; and

5.    That Respondents file a status report regarding Petitioner's bond hearing or release ten (10) days after the adoption of this recommendation and entry of a final order.

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**